Filed 1/15/25 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LUIS MENDEZ,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE,<br><br>    Real Party in Interest. | G063164<br><br>(Super. Ct. No. 21HM10091)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed on December 23, 2024, be modified as follows:

On page 15, in the first full paragraph, at the end of the sentence that begins "Further, nothing in the statute suggests . . . ", add the following footnote:

[9] At oral argument and in his petition for rehearing, Mendez first argues our construction of section 1367(b) is flawed because it fails to take into consideration the last sentence of that code section which provides: "Section 1370.02 applies to a person alleged to have violated the terms of the person's postrelease community supervision or parole." Our opinion does not address that portion of section 1367(b) because there is no allegation at issue in this case Mendez violated the terms of postrelease community supervision or parole. Our opinion is limited to the application of that statute when a person, determined to be mentally incompetent as a result of a mental health disorder, is charged with a felony and/or with "a misdemeanor or misdemeanors only." Whether the Legislature intended the possibility of placing a mentally incompetent person on more than one concurrent track for mental health treatment when the person is alleged to have violated the terms of the person's postrelease community supervision or parole is not before us, nor are the specific policy concerns underlying that portion of section 1367(b). In any event, the possibility of a concurrent track under such circumstances does not conflict with our interpretation of the portions of section 1367(b) at issue in this case.

All footnotes after new footnote 9 should, of course, be correspondingly numbered.

The petition for rehearing is DENIED. There is no change in judgment.

MOTOIKE, J.

WE CONCUR:

SANCHEZ, ACTING P. J.

GOODING, J.

2

Filed 12/23/24 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LUIS MENDEZ, | |
| Petitioner, | |
| v. | G063164 |
| THE SUPERIOR COURT OF ORANGE COUNTY, | (Super. Ct. No. 21HM10091) |
| Respondent; | O P I N I O N |
| THE PEOPLE, | |
| Real Party in Interest. | |

Original proceedings; petition for a writ of mandate/prohibition to challenge an order of the Superior Court of Orange County, Erin Rowe, Judge. Petition denied.

Martin F. Schwarz, Public Defender, Adam Vining, Assistant Public Defender, and Lauren Wilson, Deputy Public Defender, for Petitioner.

1

No appearance for Respondent.

Todd Spitzer, District Attorney, and Holly M. Woesner, Deputy District Attorney, for Real Party in Interest.

\*          \*          \*

When a criminal defendant is found to be mentally incompetent due to a mental health disorder, and is charged with both felony and misdemeanors, the procedures set forth in Penal Code section 1370 apply.[1] This is so even if misdemeanor charges are alleged in a separate charging document from that of the felony charges.

Defendant Luis Mendez was charged with misdemeanors in the instant case and several felonies and a misdemeanor in a separate case when the trial court found him to be mentally incompetent. The trial court thereafter suspended criminal proceedings in both cases, followed the procedures of section 1370 in effect at the time, and, after later determining Mendez's mental competency was restored, reinstated all charges and denied Mendez's motion to dismiss the instant case pursuant to section 1370.01. In this writ petition, Mendez argues section 1370.01 applied to the misdemeanors charged in the instant case and the court erred in denying his motion to dismiss the instant case.

After a trial court determines a person charged with criminal offenses is mentally incompetent because of a mental health disorder, what happens next depends on whether that person has been charged with a felony or has been "charged with a misdemeanor or misdemeanors only." (§ 1367, subd. (b) (section 1367(b)).) The procedures set forth in section 1370 apply "to

---

[1] All undesignated statutory references are to this code.

2

a person who is charged with a felony," and those of section 1370.01 apply "to a person who is charged with a misdemeanor or misdemeanors only." (§ 1367(b).)

Since Mendez was a person charged with a felony and not one charged with "misdemeanor or misdemeanors only" when he was found mentally incompetent, section 1370 applied to all charges, regardless of the fact they were brought in two separate actions. We interpret section 1367(b) to provide that section 1370.01 applies when a mentally incompetent defendant is charged with only misdemeanors. Therefore, the trial court did not err by applying section 1370, reinstating criminal proceedings after Mendez's mental competency was restored, or by denying his motion to dismiss. We deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

### THE CHARGES

In December 2021, Mendez was charged in the instant case with two misdemeanors: (1) committing domestic battery with corporal injury (§ 273.5, subd. (a)); and (2) making criminal threats (§ 422, subd. (a)). In October 2022, Mendez was charged in a felony complaint in case No. 22WF2891 with: (1) two counts of attempted murder (§§ 664, subd. (a), 187, subd. (a)); (2) two counts of assault with a firearm on a peace officer/firefighter (§ 245, subd. (d)(1)); (3) resisting an executive officer (§ 69); (4) possession of a firearm with a prior misdemeanor conviction (§ 29805, subd. (a)(1)); (5) owning ammunition as a prohibited person (§ 30305, subd. (a)(1)); (6) misdemeanor possession of a large capacity magazine (§ 32310, subd. (c)); and (7) possession/sale/manufacture of a short-barreled

shotgun or rifle (§ 33210). We refer to the instant case as "the instant misdemeanor case" and case No. 22WF2891 as "the companion felony case."

Counsel was appointed as to both cases. The trial court ordered the cases to be kept together.

## II.

### THE TRIAL COURT DETERMINES MENDEZ TO BE MENTALLY INCOMPETENT

In late October 2022, Mendez's counsel informed the trial court a doubt had arisen as to Mendez's mental competence. The court ordered criminal proceedings in both the instant misdemeanor case and the companion felony case suspended and instituted proceedings under section 1368 et seq. to determine Mendez's mental competency.

In February 2023, following a bench trial regarding Mendez's mental competence for both cases, the court found Mendez to be a mentally incompetent person within the meaning of section 1367, subdivision (a). In March, following a mental health commitment hearing, the court ordered Mendez committed to the State Department of State Hospitals (State Hospitals) pursuant to section 1370 et seq. as to the companion felony case.[2]

At the mental health commitment hearing, Mendez's counsel made an oral motion to dismiss the instant misdemeanor case pursuant to section 1385. The People objected. The trial court did not entertain argument but continued the instant misdemeanor case to provide the People the

---

[2] The record shows the trial court received a "written recommendation from the Mental Health Department" recommending commitment to the State Hospitals.

4

opportunity to comply with the Victims' Bill of Rights Act of 2008 (Marsy's Law).[3]

## III.

### THE TRIAL COURT DENIES MENDEZ'S MOTION TO DISMISS THE INSTANT MISDEMEANOR CASE

On April 7, 2023, Mendez filed a motion to dismiss the instant misdemeanor case pursuant to section 1370.01. Mendez argued a plain reading of section 1370.01, as amended by Senate Bill No. 317 (2021-2022 Reg. Sess.) (Senate Bill 317), provides there is no longer a procedure for restoring competency in misdemeanor proceedings after a defendant is found to be mentally incompetent.

At the hearing on the motion, the trial court acknowledged section 1370.01 provides the court "multiple options including the option to dismiss pursuant to Penal Code section 1385," but observed dismissal "is not mandatory under . . . section 1370.01." The trial court stated it declined "at this time" to exercise its discretion under section 1385 and denied the motion to dismiss the instant misdemeanor case without prejudice.

The court further explained: "In making this ruling the court has taken the legislative intent from Penal Code section 1370.01, subsection d, into account that a defendant with a misdemeanor case who has been found incompetent to stand trial receive mental health treatment in a treatment facility and not a jail. The recommendation for the defendant to be treated on an inpatient basis at the . . . State Hospitals and his treatment currently complies with the stated legislative intent. Furthermore, because criminal

---

[3] Cal. Const., art. I, § 28.

proceedings have been suspended during a statutory time there's no speedy trial issues.

"The court notes that the defendant is unable to comply with mental health diversion referenced in Penal Code section 1370.01, subsection b, due to the . . . State Hospitals commitment.

"The court is also mindful of the significant public safety issues should misdemeanor cases be dismissed before an assessment of restoration of competency can be completed. Should the defendant be restored to competency[,] misdemeanors cannot be refiled. They include such cases like what we have in front of us here which is a domestic violence case. Dismissal denies victims the ability to obtain a restraining order and be reasonably protected which is a right afforded by the California state [C]onstitution section 28, subsection A, also known as Marsy's law. It also eliminates the requirements for the defendant to attend a rehabilitat[i]ve program should the case be dismissed.

"If the Legislature intended the automatic dismissal of misdemeanors for those charged with felonies being treated by the . . . State Hospitals pursuant to Penal Code section 1370, the Legislature had the ability to clearly state such an intent."

At the hearing, the People stipulated Mendez could earn custody credits on the misdemeanor case while he was committed to the State

Hospitals. The trial court ordered Mendez released on his own recognizance as to the instant misdemeanor case only.[4]

## IV.

### MENDEZ'S MENTAL COMPETENCE IS RESTORED AND CRIMINAL PROCEEDINGS IN BOTH CASES ARE REINSTATED

A certificate of restoration to mental competence pursuant to section 1372 was filed on August 8, 2023, certifying Mendez met the criteria "to be opined mentally competent." At the hearing on August 25, 2023, Mendez and the People submitted on the certificate. The trial court found Mendez mentally competent and reinstated criminal proceedings in the instant misdemeanor case and the companion felony case.

At the same hearing, Mendez's counsel asked the court to "separate the felonies," not deem Mendez's mental competence restored as to the instant misdemeanor case, and allow Mendez to be heard regarding dismissal of that case. The trial court denied the request, stating: "We have not done that before. When there is a [section] 1372 that comes back, all cases will proceed. I don't think that in any way jeopardizes the right to file a writ or appeal that order, but everything has been -- once there is a determination of competence, it's the court's position that that applies to all

---

[4] The register of actions in the instant misdemeanor case shows that at a hearing on July 5, 2023, Mendez's trial counsel made another oral motion to dismiss the case to which the People objected. The register of actions notes: "The court declines the invitation to dismiss [and] denies the motion without prejudice. The court will continue the matter on its own motion until receipt of the 90 day progress report, then calendar a hearing so the parties may renew their motions and the court can assess the individual merits of each case for Penal Code section 1385 consideration." Our record does not include a transcript for that hearing.

7

cases, whether they are felonies or independently filed misdemeanors. [¶] So it's the court's position that all cases will be restored and that criminal proceedings are reinstated on all."

Mendez's counsel responded: "With that in mind, your honor, we are asking that that misdemeanor be dismissed since Mr. Mendez has been committed on the misdemeanor and served a substantial amount of time. And I don't believe being committed per a [section] 1370 on the misdemeanor is something that is lawful." The trial court again declined "to exercise [section] 1385 discretion . . . with the understanding that if there are any motions to be filed regarding that, that we can address them when they are filed." The court thereafter set a pretrial date for the companion felony case for September 22, 2023 and continued arraignment on the instant misdemeanor case to that date to provide Mendez's counsel the opportunity to file the instant petition for a writ of mandate/prohibition.[5]

V.

MENDEZ FILES THE PETITION FOR A WRIT OF
MANDATE/PROHIBITION IN THIS COURT

Mendez filed this petition for a writ of mandate/prohibition on October 4, 2023 (the petition). The petition requested the issuance of a writ of mandate or prohibition directing the respondent court to (1) vacate its August 25, 2023 order reinstating criminal proceedings in the instant misdemeanor case and denying his motion to dismiss that case, (2) issue a new order granting his motion to dismiss, and (3) refrain from setting further dates in that case. After inviting and receiving an informal response from the

---

[5] Mendez filed a petition for writ of mandate and request for stay with the Appellate Division of the Superior Court of Orange County, which summarily denied the petition and request.

8

People, this court issued an alternative writ. The respondent court declined to comply with the alternative writ, and the People filed a return.

This court thereafter issued an order to show cause why a writ of mandate or other appropriate relief should not issue, ordered the People to file a return, and invited Mendez to file a reply. The People filed another return and Mendez filed a reply accordingly.

DISCUSSION

I.

DETERMINING MENTAL INCOMPETENCY

"The federal and state guarantees of due process forbid a court from trying, convicting, or punishing a criminal defendant who is mentally incompetent to stand trial. (U.S. Const., 14th Amend.; Cal. Const., art. I, §§ 7, 15; [citation].) This principle is codified in section 1367. [Citation.] Section 1367 qualifies a person as mentally incompetent to stand trial 'if, as a result of a mental health disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner.'" (*Persiani v. Superior Court* (2024) 100 Cal.App.5th 48, 57 (*Persiani*).)

During the criminal proceedings, if, as was the case here, "counsel informs the court that he or she believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant's mental competence is to be determined in a hearing which is held pursuant to Sections 1368.1 and 1369." (§ 1368, subd. (b).) When the court issues an order for a hearing to determine the defendant's mental competence, "all proceedings in the criminal prosecution shall be suspended until the question of the present mental competence of the defendant has

9

been determined." (§ 1368, subd. (c).) The procedures for the competency hearing are set forth in section 1369. If the defendant is found mentally competent, criminal proceedings resume. (§§ 1370, subd. (a)(1)(A), 1370.01, subd. (a).)[6]

## II.

### Upon a Finding of Mental Incompetency, Section 1367(b) Determines What Happens Next

If the defendant is found mentally incompetent, what happens next depends on the nature of the charges the defendant was then facing, as described in section 1367(b). Section 1367(b) provides that the procedures set forth in section 1370 apply "to a person who is charged with a felony . . . and is incompetent as a result of a mental health disorder."

"Under section 1370, a felony defendant found mentally incompetent to stand trial is committed to the . . . State Hospitals or other treatment facility or placed on outpatient status for treatment to regain competency. [Citation.] This provides a path to mental competence through treatment, and once the court finds the defendant's competence has been restored, criminal proceedings resume. [Citations.] Instead of committing a felony defendant to a public or private treatment facility, the court may grant the defendant treatment through mental health diversion if the court finds the defendant is an appropriate candidate and the defendant is found eligible

---

[6] Both sections 1370 and 1370.01 have been amended since the challenged order in this case, but those amendments do not impact our interpretation of section 1367(b), which has not since been amended. Our references to section 1370 and section 1370.01 in this opinion are to the versions that were in effect during the relevant time period of March 2023 to August 2023.

for diversion under section 1001.36." (*Persiani, supra,* 100 Cal.App.5th at p. 58.)

The procedures set forth in section 1370.01 apply "to a person who is charged with a misdemeanor or misdemeanors only . . . and the judge finds reason to believe that the defendant has a mental health disorder, and may, as a result of the mental health disorder, be incompetent to stand trial." (§ 1367(b).)

The version of section 1370.01 in effect from the time Mendez was declared mentally incompetent in March 2023 until the court found he had regained mental competence in August 2023 (the 2023 version of section 1370.01),[7] provided in relevant part: "(b) If the defendant is found mentally incompetent, the trial, judgment, or hearing on the alleged violation shall be suspended and the court may do either of the following:

"(1)(A) Conduct a hearing, pursuant to Chapter 2.8A (commencing with Section 1001.35) of Title 6, and, if the court deems the defendant eligible, grant diversion pursuant to Section 1001.36 for a period not to exceed one year from the date the individual is accepted into diversion or the maximum term of imprisonment provided by law for the most serious offense charged in the misdemeanor complaint, whichever is shorter.

"(B) If the court opts to conduct a hearing pursuant to this paragraph, the hearing shall be held no later than 30 days after the finding of incompetence. If the hearing is delayed beyond 30 days, the court shall order the defendant to be released on their own recognizance pending the hearing.

---

[7] Stats. 2022, ch. 735, § 3.5.

11

"(C) If the defendant performs satisfactorily on diversion pursuant to this section, at the end of the period of diversion, the court shall dismiss the criminal charges that were the subject of the criminal proceedings at the time of the initial diversion.

"(D) If the court finds the defendant ineligible for diversion . . . , the court *may*, after notice to the defendant, defense counsel, and the prosecution, hold a hearing to determine whether to do any of the following:

"(i) Order modification of the treatment plan in accordance with a recommendation from the treatment provider.

"(ii) Refer the defendant to assisted outpatient treatment pursuant to Section 5346 of the Welfare and Institutions Code. . . . If the defendant is accepted into assisted outpatient treatment, the charges shall be dismissed pursuant to Section 1385.

"(iii) Refer the defendant to the county conservatorship investigator in the county of commitment for possible conservatorship proceedings for the defendant pursuant to Chapter 3 (commencing with Section 5350) of Part 1 of Division 5 of the Welfare and Institutions Code. . . . If the outcome of the conservatorship proceedings results in the establishment of conservatorship, the charges shall be dismissed pursuant to Section 1385.

"(2) Dismiss the charges pursuant to Section 1385. If the criminal action is dismissed, the court shall transmit a copy of the order of dismissal to the county mental health director or the director's designee." (Italics added.)

12

## III.

### AT ALL RELEVANT TIMES, MENDEZ WAS A PERSON CHARGED WITH A FELONY, AND NOT A PERSON "CHARGED WITH A MISDEMEANOR OR MISDEMEANORS ONLY," WITHIN THE MEANING OF SECTION 1367(b)

In the petition, Mendez contends the trial court erred by applying section 1370 with respect to the instant misdemeanor case, which he argues is one charging "misdemeanors only" within the meaning of section 1367(b). Mendez argues the trial court should have looked no further than the four corners of the accusatory pleading in the instant misdemeanor case, determined Mendez was a person "'charged with a misdemeanor or misdemeanors only,'" applied section 1370.01, and ultimately dismissed the instant misdemeanor case. For the reasons we explain, Mendez's interpretation of section 1367(b) is without merit.

"''''''When we interpret a statute, '[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.] 'Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.'''''''

13

[Citation.] The interpretation of a statute presents a question of law that this court reviews de novo.'" (*People v. Braden* (2023) 14 Cal.5th 791, 804.)

Section 1367(b) broadly applies section 1370 "to *a person* who *is charged* with a felony." (Italics added.) It does not condition section 1370's applicability on how, where, or when the person is charged but provides section 1370 applies when a person who is currently charged with a felony has been found mentally incompetent as a result of a mental health disorder. Section 1367(b) also limits the application of section 1370.01 "to *a person* who *is charged* with a misdemeanor or misdemeanors *only*." (Italics added.)

Mendez argues section 1367(b) should be interpreted to impliedly impose some type of accusatory pleading test to determine whether section 1370 or 1370.01 applies in a given case. But the statute does not say that. The Legislature's use of the words "a person," "is charged," and "only" in section 1367(b) reflects its intention that the trial court do precisely what the court did in this case—consider all of the charges the defendant was then-currently facing when the defendant was found to be mentally incompetent in determining what to do next. Mendez does not cite any legal authority interpreting section 1367(b) otherwise, and we have found none.

Had the Legislature intended to distinguish the procedures by which mental incompetency is handled on a pleading type basis, as framed and limited by the operative accusatory pleading, it could have done so; it did not. The Legislature has used and continues to use the phrase "an accusatory pleading" in the 2023 version of section 1001.36, subdivision (a),[8] a related

---

[8] This 2023 version of section 1001.36 has since been repealed and that code section has been reenacted.

14

statute that is cited in section 1370, and in each subsequent iteration of section 1001.36, including the further amended version of section 1001.36 that will become effective January 1, 2025. (Stats. 2024, ch. 646, § 1.5.) Yet similar terms like pleading, complaint, action, and case are all conspicuously absent from section 1367(b) in its delineation of the mental health treatment options available to persons charged with a felony and those charged with a misdemeanor or misdemeanors only. (See *Walt Disney Parks & Resorts U.S., Inc. v. Superior Court* (2018) 21 Cal.App.5th 872, 879 ["Where, as here, the Legislature has chosen to include a phrase in one provision of the statutory scheme, but to omit it in another provision, we presume that the Legislature did not intend the language included in the first to be read into the second"].) Based on the plain language of the statute, we conclude section 1370 applies when a defendant is charged with a felony, even if the felony is charged in a separate case.

Further, nothing in the statute suggests the Legislature intended to place a mentally incompetent defendant on more than one concurrent (and likely overlapping) track for mental health treatment simply because felony and misdemeanor charges he or she was then currently facing were filed in separate cases. Section 954 provides: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated." In light of the rule provided in section 954, conceivably, a defendant might have pending felony and misdemeanor charges filed in several separate cases at the time the defendant is

15

determined to be mentally incompetent. Applying Mendez's interpretation of section 1367(b) would require the trial court to make a separate and independent mental health treatment order—some perhaps applying section 1370 and others simultaneously applying section 1370.01—for each open case instead of authorizing the court to view the individual defendant's status, and make its order accordingly.

Significantly, a literal interpretation of the plain language of section 1367(b) serves the Legislature's intended purpose of ensuring that defendants, whether charged with felonies and/or misdemeanors, receive appropriate mental health care. In the petition, Mendez tacitly acknowledges that if a defendant were facing both felony and misdemeanor charges that were all alleged in a single accusatory pleading, as in the companion felony case, section 1370 would apply. In such a case, the defendant would be committed to the State Hospitals or other treatment facility or placed on outpatient status for mental health treatment to regain competency. (§§ 1370, subd. (a)(1)(B)(i) & (C), 1372.)[9] Mendez further tacitly acknowledges that under such circumstances, once the court finds the defendant's mental competence to have been restored, criminal proceedings would be reinstated for all charges, felonies, and misdemeanors alike; nothing in section 1370

---

[9] Section 1370 also authorizes the trial court to grant treatment through mental health diversion for eligible and otherwise appropriate candidates under section 1001.36. (§ 1370, subd. (a)(1)(B)(v); see *Persiani, supra*, 100 Cal.App.5th at p. 58.)

suggests otherwise.[10] Given this statutory framework, what purpose would be served by treating the misdemeanor charges differently simply because they are charged in a different document than pending felony charges? Neither the relevant statutory language nor caselaw provides an answer to this question.

Mendez argues the legislative history of the 2023 version of section 1370.01 supports his construction of section 1367(b). A panel of this court in *Persiani, supra*, 100 Cal.App.5th at pages 58–59 summarized the legislative history of that statute as follows: "Senate Bill 317[] repealed former section 1370.01 effective December 31, 2021, and enacted its replacement effective January 1, 2022 [the 2023 version of section 1370.01]. [Citation.] When a defendant was found mentally incompetent, the former statute required the court to suspend criminal proceedings until the defendant became mentally competent. [Citation.] Like section 1370, former section 1370.01 provided a path to restore the defendant's mental competence through treatment at a public or private facility or on outpatient status. [Citation.] Once competence was restored, criminal proceedings resumed. [Citation.]

"Under the former statute, if the court found the defendant was an appropriate candidate for mental health diversion and the defendant was eligible under section 1001.36, the court could grant mental health diversion for a period not to exceed one year. At the end of the period of diversion, the

---

[10] The Legislature itself acknowledged such a circumstance in section 1382, subdivision (a)(3) which provides a trial court must dismiss an action "when a defendant in a misdemeanor or infraction case is not brought to trial . . . within 30 days after the date of reinstatement of criminal proceedings pursuant to Chapter 6 (commencing with Section 1367)."

defendant was no longer deemed incompetent to stand trial and the charges were dismissed. [Citation.] If the court did not grant mental health diversion, the court could, after an evaluation was conducted, order the defendant be confined in a treatment facility[11] or placed on outpatient status [citation] and order the involuntary administration of antipsychotic medication to the defendant as prescribed by the defendant's treating psychiatrist [citation].

"[¶] . . . [¶] . . . [Senate Bill 317]'s author explained the need for the legislation: "'Existing law does not provide incompetent defendants adequate mental health treatment when the defendant is charged with a misdemeanor. These defendants often spend most, if not all, of their pre-trial detention waiting for a treatment bed. [¶] . . . [¶] [Senate Bill] 317 provides pathways to appropriate mental health treatment for defendants charged with misdemeanors.'" [Citation.] The new legislation did 'not contemplate restoration of competency or a resumption of criminal proceedings.' [Citation.] The objective, instead, was mental health treatment."

The above summarized legislative history is entirely consistent with our interpretation of section 1367(b) as it shows the Legislature, in enacting Senate Bill 317, was particularly concerned about mentally incompetent misdemeanor defendants being confined in jail and not receiving mental health treatment. Defendants who have been charged not only with a misdemeanor but also with a felony would receive mental health treatment

---

[11] The term "'treatment facility'" was defined in since repealed former section 1369.1, subdivision (a) to include a county jail. Subdivision (d) of the 2023 version of section 1370.01 clarified: "It is the intent of the Legislature that a defendant subject to the terms of this section receive mental health treatment in a treatment facility and not a jail."

pursuant to the procedures of section 1370, and would therefore not have been an object of the Legislature's concern in that respect.

## IV.

### CONCLUSION

Mendez's contentions of error in the petition were entirely based on his argument the trial court erroneously applied section 1370 to the instant misdemeanor case. Based on the analysis and legal authorities discussed *ante*, section 1370 applied to the instant misdemeanor case because Mendez was a person charged with a felony at the time he was found mentally incompetent. The trial court therefore did not err by reinstating the instant misdemeanor case along with the companion felony case after it found Mendez's mental competency had been restored, or by denying his motion under section 1370.01 to dismiss the instant misdemeanor case.

### DISPOSITION

The petition for a writ of mandate/prohibition is denied.


MOTOIKE, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


GOODING, J.


19